Jason Hicks
Nevada Bar No. 13149
**GREENBERG TRAURIG, LLP**
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
Telephone: (702) 792-3773
Jason.Hicks@gtlaw.com

Megan Cooney (*pro hac vice*)
**GIBSON DUNN & CRUTCHER LLP**
3161 Michelson Drive Suite 1200
Irvine, CA 92612-4412
MCooney@gibsondunn.com
Telephone: (949) 451-4342

Lucas C. Townsend (*pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
1700 M Street, N.W.
Washington, D.C. 20036-4504
LTownsend@gibsondunn.com
Telephone: (202) 995-8500

Michael E. Kenneally (*pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, NW
Washington, DC 20004-2541
michael.kenneally@morganlewis.com
Telephone: (202) 739-5893

Attorneys for Defendants
AMAZON LOGISTICS, INC. and
AMAZON.COM, INC.

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ANDREW SPINNEY, Individually and on behalf of a class of all similarly situated persons,<br><br>    Plaintiff,<br><br>v.<br><br>AMAZON LOGISTICS, INC., and AMAZON.COM, INC.,<br><br>    Defendants. | CASE NO. 2:25-cv-01803-RFB-DJA<br><br>**SECOND RENEWED MOTION BY DEFENDANTS AMAZON LOGISTICS, INC., AND AMAZON.COM, INC. TO COMPEL ARBITRATION AND STAY THE LITIGATION**<br><br>ORAL ARGUMENT REQUESTED |

Defendants Amazon.com, Inc. and Amazon Logistics, Inc. hereby move for a Court order compelling Plaintiff Andrew Spinney to compel arbitration on an individual basis and staying this litigation pending arbitration. Plaintiff agreed to arbitrate this dispute, and his arbitration agreement is enforceable under the Federal Arbitration Act and/or applicable state law, including the Delaware Uniform Arbitration Act. After Defendants first moved to compel arbitration and stay this litigation (ECF Nos. 6-11), Plaintiff filed an amended complaint (ECF No. 14). Amazon renewed its arbitration motion (ECF Nos. 25-30), the parties jointly stipulated (ECF Nos. 33, 35) to stay the action pending a decision in *Flowers Foods, Inc. v. Brock*, 146 S. Ct. 1358 (2026), and Amazon's renewed motion was denied without prejudice as moot (ECF No. 35). The decision in *Flowers Foods* does not alter the enforceability of Plaintiff's arbitration agreements, and Defendants therefore renew their motion again. In support of this renewed motion, Defendants submit a memorandum of points and authorities in accordance with Local Rule 7-2(a).

DATED:  July 29, 2026                              GREENBERG TRAURIG, LLP


By:  */s/ Jason Hicks*
     Jason Hicks
     Nevada Bar No. 13149
     10845 Griffith Peak Drive, Suite 600
     Las Vegas, NV 89135
     Jason.Hicks@gtlaw.com


     Attorneys for Defendants
     AMAZON LOGISTICS, INC. and
     AMAZON.COM, INC

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiff Andrew Spinney contracted with Amazon Logistics, Inc. as an Amazon Flex Delivery Partner to use his personal vehicle to deliver locally stocked goods that retail customers purchased for same-day delivery. In doing so, he agreed to arbitrate any dispute related to Amazon Flex and agreed to delegate disputes about arbitrability to the arbitrator. Yet now he seeks to litigate in court. Plaintiff's agreement is valid and enforceable. This Court should hold Plaintiff to it, compel arbitration, and stay the litigation pending arbitration, as many other courts have done when faced with the same agreement.

Plaintiff's allegations suggest he will try to escape his agreement by invoking Section 1 of the Federal Arbitration Act ("FAA"). ECF No. 14 ("Amended Complaint"), ¶ 8. That statutory provision exempts from the FAA's coverage a narrow category of contracts with certain interstate-transportation workers. *See* 9 U.S.C. § 1. Plaintiff's reliance on this exemption fails for two independent reasons.

The first is that Plaintiff's contract is not exempt from the FAA. Plaintiff may portray his deliveries as mirroring the deliveries found to trigger the FAA's exemption in *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904 (9th Cir. 2020). But the evidence submitted with this motion shows that the facts here differ significantly from those that the Ninth Circuit analyzed in *Rittmann* nearly six years ago. While the Ninth Circuit there considered transporting Amazon packages for the "last leg" of a "continuous interstate" shipment, *id.* at 915-16, the facts here show that Plaintiff almost exclusively performed deliveries of goods that were stocked on shelves in Nevada until a Nevada customer decided to purchase them. The goods were almost always either at a Nevada retail store or the functional equivalent—a same-day warehouse that stores an inventory of goods for sale and delivery to local retail customers. Courts applying *Rittmann*'s framework have widely held that deliveries of locally stocked retail and same-day items do not trigger the FAA exemption. And nothing in the Supreme Court's narrow decision in *Flowers Foods, Inc. v. Brock*, 146 S. Ct. 1358 (2026), undermines that robust body of case law. The Supreme Court merely rejected "a bright-line rule that an individual can never qualify for § 1's exemption unless he crosses state lines or interacts with vehicles that do," and the Court left undisturbed the cases addressing "intrastate couriers" who deliver locally stocked items. *Id.* at 1366 (citing *Immediato v. Postmates, Inc.*, 54 F.4th 67, 72, 78 (1st Cir. 2022)).

The second problem with Plaintiff's argument is that his arbitration agreement is enforceable under Delaware state law regardless of whether it is covered by the FAA. Courts in this Circuit and elsewhere enforce arbitration agreements under state law even if those agreements are, or may be, exempt from the FAA. *E.g.*, *Romero v. Watkins & Shepard Trucking, Inc.*, No. 20-55768, 2021 WL 3675074, at *1 (9th Cir. Aug. 19, 2021) (compelling FAA-exempt trucker to arbitrate under Nevada law); *Harper v. Amazon.com Servs., Inc.*, 12 F.4th 287, 294-96 (3d Cir. 2021) (*Harper I*) (explaining that if the FAA exemption analysis "leads to murky answers," courts should first consider whether the contract requires arbitration under state law). Plaintiff's agreement in this case expressly states that if a court finds the FAA inapplicable, Delaware law applies. Like the FAA, Delaware law has a strong policy in favor of enforcing arbitration agreements. But unlike the FAA, Delaware law has no carveout for transportation workers. The TOS that Plaintiff accepted is therefore fully enforceable under Delaware law regardless of whether it is exempt from the FAA—as every court to decide the issue has agreed. *See Walker v. Amazon Logistics, Inc.*, 809 F. Supp. 3d 749, 759-60 (N.D. Ohio 2025); *McBratnie v. Amazon.com, Inc.*, No. 24-cv-12914, 2025 WL 2237367, at *5 (E.D. Mich. May 20, 2025) (*McBratnie I*), *R. & R. adopted*, 2025 WL 2048328, at *6 (E.D. Mich. July 22, 2025) (*McBratnie II*); *Melikyan v. Amazon.com, Inc.*, No. 21-cv-8715, 2023 WL 4505065, at *3 (C.D. Cal. July 5, 2023). This Court should likewise compel Plaintiff to arbitrate under Delaware law.

Thus, whether under federal or state law, the Court should compel Plaintiff to arbitrate his claims on an individual basis as his agreement requires and should stay this litigation pending arbitration.

## II.     FACTUAL BACKGROUND

### A.     Amazon Flex and the Terms of Service

Amazon's affiliates sell products through a variety of channels, including the Amazon.com website, mobile applications, and retail locations including Whole Foods Market. *See* Declaration of Nick Jones ("Jones Decl."), ¶¶ 4-5. Through a smartphone application-based program called Amazon Flex, Plaintiff signed up to become eligible to perform delivery blocks as an independent-contractor "Delivery Partner." *Id.* ¶¶ 6, 8, 25. Plaintiff used his personal vehicle to make local deliveries of groceries, food, and other goods, in almost all cases from an Amazon "Sub Same-Day" facility. *Id.* ¶¶ 9-24, 36. To do so, Plaintiff had to download the Amazon Flex app on a phone, create an account, and accept the Amazon Flex Independent Contractor Terms of Service ("TOS"). *Id.* ¶ 25.

Plaintiff followed that process when he signed up to become eligible to make Amazon Flex deliveries. Amazon's records show that on July 28, 2020, he clicked a button signifying that he accepted the then-applicable version of the TOS. *Id.* ¶¶ 25-28. He also clicked a second button specifically agreeing to arbitration. *Id.* ¶¶ 27, 29. Plaintiff acknowledges that he entered into a contract with Amazon and that his contract includes an arbitration agreement. Am. Compl. ¶¶ 6, 8.

When Plaintiff initially signed up with Amazon Flex, the applicable version of the TOS was Version 11. *Id.* ¶¶ 25-26 & Ex. A ("TOS v.11"). This agreement contained a modifications provision:

> Amazon may modify this Agreement . . . at any time by providing notice to you through the Amazon Flex app or otherwise providing notice to you. You are responsible for reviewing this Agreement regularly to stay informed of any modifications. If you continue to perform the Services . . . after the effective date of any modification to this Agreement, you agree to be bound by such modifications. . . .

TOS v.11 § 13. The agreement explained that Amazon would communicate by email and other channels, and Plaintiff "consent[ed] to Amazon communicating with [him] concerning the Program via any or all of these means," and Plaintiff assumed responsibility for tracking such communications. TOS v.11 § 14. In 2021, Amazon notified existing Delivery Partners, including Plaintiff, that an updated version of the TOS would be taking effect. Jones Decl. ¶ 31 & Ex. B. Amazon sent an email to the address that each Delivery Partner had agreed to monitor and keep current, which bore the subject line, "Update to Amazon Flex Terms of Service." *Id.* ¶ 31. The body of the email stated that the TOS had been updated and that continued use of the Amazon Flex app would bind the recipient to the updated terms. *Id.* ¶ 31 & Ex. B. After receiving this email, Plaintiff accepted the updated TOS version, Version 12, by using the Amazon Flex app to schedule and complete numerous delivery blocks. *Id.* ¶¶ 33, 36; *see id.* ¶ 32 & Ex. C ("TOS v.12"). Plaintiff later accepted yet another version of the TOS, Version 13, by using the Amazon Flex app to schedule and complete deliveries after Version 13 took effect in December 2022. *Id.* ¶¶ 34-36; *see id.* ¶ 34 & Ex. D ("TOS v.13").[1]

In all these versions of the TOS, Section 11(a) is a broad, mutual agreement to arbitrate "any dispute or claim, whether based on contract, common law, or statute, arising out of or relating in any way to this

---

[1] Version 13 is identical to Version 12 in all respects relevant to this motion. The only difference between Versions 12 and 13 is in Section VI.A of the Program Policies, which addresses privacy issues and Delivery Partners' personal information. The arbitration-related provisions in these two agreements are identical.

Agreement . . . , to your participation in the Program, or to your performance of Services." TOS v.11 § 11(a); TOS v.12 § 11(a); TOS v.13 § 11(a) (some capitalization omitted). Arbitration must go forward on an individual basis only. TOS v.11 § 11(b)-(i); TOS v.12 § 11(b)-(g); TOS v.13 § 11(b)-(g). Two other aspects of the TOS are relevant here as well:

*First*, the TOS delegates disputes over arbitrability to the arbitrator. In particular, the TOS provides for arbitration under the Commercial Arbitration Rules of the American Arbitration Association ("AAA"). TOS v.11 § 11(k); TOS v.12 § 11(i); TOS v.13 § 11(i). And it directs that the "arbitrator must resolve . . . disputes" over "the arbitrability of claims" under Section 11(a). TOS v.11 § 11(*l*); TOS v.12 § 11(j); TOS v.13 § 11(j).

*Second*, the "Governing Law" provision generally chooses Delaware law to govern the contract. TOS v.11 § 12; TOS v.12 § 12; TOS v.13 § 12. This provision further specifies that Section 11 (the arbitration section of the TOS) is "governed by the Federal Arbitration Act and applicable federal law." *Id.* But "[i]f, for any reason, the Federal Arbitration Act is held by a court of competent jurisdiction not to apply to Section 11 … , the law of the state of Delaware … will govern Section 11." TOS v.11 § 12; TOS v.12 § 12; TOS v.13 § 12. In the two most recent versions of Plaintiffs' contract, Section 12 has underscored that nothing in the choice-of-law provision "shall preclude the application of Delaware law to compel arbitration if a court of competent jurisdiction is unable to determine the application of the Federal Arbitration Act without discovery." TOS v.12 § 12; TOS v.13 § 12.

### B.   This Litigation

Plaintiff filed this lawsuit in the Eighth Judicial District Court in Clark County, Nevada on August 18, 2025. *See* ECF No. 1-3. He alleges that he contracted with Amazon and provided services in Nevada as an Amazon Flex "driver[]." Am. Compl. ¶ 6. He asserts that Amazon misclassified Amazon Flex Delivery Partners in Nevada as independent contractors rather than employees. Am. Compl. ¶ 7. Based on this premise, he claims that Amazon owes him and a putative class of Delivery Partners in the state of Nevada allegedly unpaid minimum wages, penalties, damages, and attorney's fees under NRS 608.040, NRS 608.050, NRS 608.250, and Article 15, Section 16, of the Nevada Constitution. Am. Compl. ¶¶ 4, 21, 35. Under Plaintiff's theory, he and putative class members received less than the minimum wage because Amazon did not reimburse Delivery Partners for expenses such as vehicle mileage expenses. Am. Compl.

¶ 23. Plaintiff also alleges that he has "separated" from the Amazon Flex program and is owed waiting-time penalties for wages allegedly not paid at the time of separation. Am. Compl. ¶¶ 36-38. In his Amended Complaint, Plaintiff added a request for injunctive relief that he characterizes as a "public injunction," which according to the Amended Complaint cannot be limited by an arbitration agreement. Am. Compl. ¶¶ 27-35.

Amazon removed the action to this Court on September 24, 2025. ECF No. 1. Amazon promptly moved to compel arbitration and stay the litigation in response to the original complaint. ECF Nos. 6-11. Amazon renewed its arbitration motion in response to the filing of the Amended Complaint. ECF Nos. 25-30. The Court denied that motion without prejudice as moot after the parties agreed to stay these proceedings pending the Supreme Court's decision in *Flowers Foods*. ECF No. 35. Now, in accordance with the parties' stipulated briefing schedule, *see* ECF Nos. 36-37, Amazon again renews its motion to compel arbitration and stay this litigation.

## III.    ARGUMENT

### A.    Plaintiff agreed to arbitrate on an individual basis and agreed to delegate disputes over arbitrability to the arbitrator.

The first task of a court asked to compel arbitration is to determine whether the parties agreed to arbitrate. *See, e.g.*, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985); *Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1194 (9th Cir. 2024). To do so, courts "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

Under any potentially applicable body of state contract law, Plaintiff formed a binding agreement to arbitrate. The requirements to form a legally valid contract are similar under any potentially applicable body of state law, including Delaware (specified by the TOS and Defendants' place of incorporation) and Nevada (where Plaintiff resides and performed services). Each state requires offer and acceptance (*i.e.*, assent) and consideration. *E.g.*, *Shilling v. Shilling*, 332 A.3d 453, 462 (Del. 2024); *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005). Because the requirements for contract formation in these states do not conflict in any material way, the Court need not undertake a conflict-of-laws analysis to pick a particular state's law. *See, e.g.*, *Tri-Cnty. Equip. & Leasing v. Klinke*, 286 P.3d 593, 595 (Nev. 2012); *cf. Johnson v.*

*Wells Fargo Home Mortg., Inc.*, 635 F.3d 401, 420 n.16 (9th Cir. 2011) ("A federal court applying state substantive law is bound to follow the choice-of-law rules of the forum state.").

As described above, Plaintiff accepted Version 11 of the TOS in exchange for becoming eligible to perform services through the program on July 28, 2020, and he later accepted Versions 12 and 13 by continuing to use the Amazon Flex app to schedule and perform deliveries after notice of those new versions. Each new version states in its opening paragraphs and in Section 16(a) that it updated and replaced the prior version that Plaintiff previously accepted. TOS v.13 at 1, § 16(a); TOS v.12 at 1, § 16(a). The governing contract between the parties is the one he most recently accepted, TOS Version 13—although Plaintiff would be required to arbitrate under any of the three versions of the TOS that he accepted, which are all very similar.

Often, the next question for a motion to compel arbitration is whether the parties' controversy falls within the scope of the arbitration agreement. But the court need not conduct further inquiries when the contracting parties delegated gateway arbitrability questions to the arbitrator to resolve. *Fli-Lo Falcon*, 97 F.4th at 1194. In such cases, the arbitrability questions themselves fall within the scope of the delegation provision, which is "an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce." *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1029 (9th Cir. 2022) (citation omitted). Here, the TOS clearly and unmistakably delegates threshold disputes over arbitrability, including any dispute over the scope of the arbitration provision, to the arbitrator in two ways:

*First*, the TOS provides for arbitration under the AAA Commercial Arbitration Rules. *See* TOS v.13 § 11(i); TOS v.12 § 11(i); TOS v.11 § 11(k). Adopting these rules constitutes clear and unmistakable evidence that the parties intended to delegate arbitrability disputes to the arbitrator. *See, e.g.*, *Fli-Lo Falcon*, 97 F.4th at 1198-99 (holding that incorporation of AAA rules constitutes delegation of arbitrability to arbitrator because the rules empower the arbitrator to rule on his or her jurisdiction); *Sandler v. Modernizing Med., Inc.*, 170 F.4th 1209, 1212 (9th Cir. 2026) (same for similarly word rules of the Judicial Arbitration and Mediation Services); *Carder v. Carl M. Freeman Cmtys., LLC*, Civ. No. 3319-VCP, 2009 WL 106510, at *6 (Del. Ch. Jan. 5, 2009) (reaching same conclusion under Delaware law); *see also* AAA, *Commercial Arbitration Rules and Mediation Procedures* R-7(a) (Sept. 1, 2022) (empowering arbitrator to rule on his or her own jurisdiction), https://www.adr.org/media/ueonklrv/2026_commercial-arbitration-

rules-mediation-procedures.pdf. This TOS provision "provides 'clear and unmistakable' evidence that the parties agreed to arbitrate 'arbitrability.'" *McBratnie I*, 2025 WL 2237367, at *7 (citation omitted).

*Second*, and in addition, a separate provision of the TOS requires the arbitrator to resolve any disputes over the "arbitrability of claims" under the agreement's main arbitration clause, Section 11(a). TOS v.13 § 11(j); TOS v.12 § 11(j); TOS v.11 § 11(*l*); *see, e.g.*, *Walker*, 809 F. Supp. 3d at 755 (recognizing that Section 11(j) in Version 13 of the Amazon Flex TOS "specifically delegates disputes over the scope of the arbitration provision to the arbitrator."); *McBratnie I*, 2025 WL 2237367, at *7 (same).

Because of the delegation of arbitrability to the arbitrator, it is solely for the arbitrator to decide any challenge to whether the arbitration agreement encompasses this dispute. *See, e.g.*, *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) ("[I]f the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue."); *Fli-Lo Falcon*, 97 F.4th at 1199 (same).

But even if the TOS lacked a delegation provision, there would be no question that the arbitration clause covers the substantive dispute and claims in this case. Section 11(a) requires arbitration of "any dispute or claim, whether based on contract, common law, or statute, arising out of or relating in any way to this Agreement, including termination of this Agreement, to your participation in the Program, or to your performance of Services." TOS v.13 § 11(a) (some capitalization omitted); *accord* TOS v.12 § 11(a); TOS v.11 § 11(a). This comprehensive language plainly encompasses Plaintiff's allegations that Amazon misclassified Amazon Flex Delivery Partners as independent contractors and failed to pay legally required wages. *See supra* Section II.B. All aspects of this dispute and each of the claims arise out of or relate in some way to the TOS, Plaintiff's participation in the Amazon Flex Program, or his performance of Services and thus are covered by Section 11(a).

Plaintiff's Amended Complaint asserts a new claim "for equitable relief including a public injunction or other injunctive relief and declaratory relief pursuant to Nevada's Constitution." Am. Compl. ¶¶ 27-35 (some capitalization omitted). This claim, which was not asserted in the original complaint but first appeared after Amazon filed its original motion to compel arbitration, is a transparent attempt to avoid arbitration—even though Plaintiff agreed to arbitrate on an individual basis rather than litigate on a classwide basis. *See* Am. Compl. ¶ 30. Plaintiff alleges that "the arbitration agreements Amazon may seek to enforce … do not, and cannot, limit the right of [Plaintiff] to seek a public injunction." Am. Compl. ¶ 31.

And Plaintiff purportedly requests public injunctive relief to require Amazon to treat Nevada Delivery Partners as "employees of Amazon" subject to the requirements of Nevada wage-and-hour laws. Am. Compl. ¶ 34.

The Court should reject this arbitration-avoidance tactic. As a threshold matter, Nevada law does not recognize any concept of "public" injunctive relief in suits by private parties. The Nevada constitutional and statutory provisions that Plaintiff cites merely refer to the availability of injunctive relief to redress minimum-wage violations as to "[a]n employee" or "[t]he employee," Nev. Const. art. 15, § 16(7); NRS 608.260(2)(a)—in other words, a normal injunction benefiting a specific private party—without any suggestion of the unique sort of public injunctive relief recognized under California's consumer-protection statutes. *See McGill v. Citibank, N.A.*, 393 P.3d 85, 89-90 (Cal. 2017). Plaintiff cannot show that public injunctive relief is even theoretically available to him under Nevada law. That alone is dispositive.

Even if Nevada law did provide for some form of public injunctive relief—which it does not— Plaintiff's strategy to avoid arbitration would still fail. Under binding Ninth Circuit precedent, the injunction Plaintiff seeks "cannot be remotely characterized as 'public injunctive relief.'" *Capriole v. Uber Techs., Inc.*, 7 F.4th 854, 870 (9th Cir. 2021). In *Capriole*, plaintiffs ran the same playbook and tried to evade arbitration by arguing that state law (there, Massachusetts) would afford a *McGill*-style public injunction remedy to require the statewide reclassification of independent contractors as employees for purposes of state wage-and-hour laws. *Id*. at 868-69. The Ninth Circuit recognized that "[s]uch relief plainly does not constitute 'public injunctive relief'" because it would be "overwhelmingly directed at [the] Plaintiffs" and similarly situated workers who "would be the 'primary beneficiar[ies]' of access to overtime and minimum wage laws." *Id*. at 870-71. The Ninth Circuit's reasoning is equally controlling here. *See also, e.g., Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 546 (9th Cir. 2021) ("[I]njunctive relief aimed at regulating the substantive terms of contractual arrangements is private injunctive relief that primarily benefits those who enter into such contracts."); *Kittrell v. USA Debusk LLC*, No. 25-cv-2432, 2025 WL 3049883, at *9 (N.D. Cal. Oct. 31, 2025) (explaining that under *Hodges*, injunctive relief to remedy failure to pay all wages owed "would not, as a matter of law, be 'public injunctive relief'"); *Marshall v. GrubHub Inc.*, No. 24-cv-1218, 2025 WL 2427981, at *4 (C.D. Cal. May 16, 2025) (explaining that injunction "to stop Defendant's ongoing practice of misclassifying its delivery drivers … is private,

rather than public, injunctive relief"). As these controlling cases make clear, Plaintiff's claim for purported public injunctive relief is no barrier to arbitration.[2]

### B.    The FAA requires enforcement of the arbitration agreement.

Contrary to Plaintiff's contention, Am. Compl. ¶ 8, Plaintiff's TOS is not exempt from the FAA under Section 1's exemption for "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1.[3] The FAA's strong pro-arbitration policy requires courts to rigorously enforce FAA-governed arbitration agreements according to their terms, including by compelling arbitration and staying litigation. 9 U.S.C. §§ 3-4; *see Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505 (2018). Here, the parties selected the FAA to govern their arbitration agreements. *See* TOS v.13 § 12; TOS v.12 § 12; TOS v.11 § 12. And in any event, the FAA's basic coverage extends to arbitration agreements in "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. There is no question that the Amazon Flex TOS implicates that basic FAA coverage. Section 2's use of the phrase "involving commerce" expresses Congress's "intent to regulate to the full extent of its commerce power." *Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 114 (2001). And Amazon Flex transactions are subject to Congress's power to regulate interstate commerce.

Plaintiff does not challenge that conclusion but instead attempts to avoid the FAA by relying on the Section 1 exemption. Plaintiff's reliance on the exemption fails. Although the Ninth Circuit did hold in *Rittmann* that an Amazon Flex Delivery Partner's arbitration agreement fell within the FAA's exemption, *Rittmann*'s holding and reasoning do not apply here. That case addressed a very different—and now obsolete—record based on how Amazon Flex operated with respect to certain Delivery Partners before 2020. Under the facts now before this Court, Plaintiff's agreement is not exempt from the FAA. "As the

---

[2] Under the TOS, if there were a bona fide claim for public injunctive relief, such a claim would have to be "litigated in court," not in arbitration. TOS v.13 § 11(k); TOS v.12 § 11(k). The Court, rather than an arbitrator, decides whether a claim is truly for public injunctive relief. *Id.* Any non-arbitrable claim of this sort would have to "be stayed until the resolution of [each arbitrable] claim." TOS v.13 § 11(*l*); TOS v.12 § 11(*l*). But, as described already, Plaintiff raises no genuine public-injunction claim.

[3] The Ninth Circuit recently held that district courts must resolve the applicability of the FAA Section 1 exemption before compelling arbitration under state law if the contract terms require the court to do so and arbitrable issues "turn on whether the FAA applies." *In re Orr*, 178 F.4th 525, 533 (9th Cir. 2026). Here, the applicable TOS permits the Court to compel arbitration without definitively resolving the FAA's applicability. TOS v.13 § 12 ("Nothing in this choice of law provision shall preclude the application of Delaware law to compel arbitration if a court of competent jurisdiction is unable to determine the application of the Federal Arbitration Act without discovery."); *see also* TOS v.12 § 12 (same). And unlike *In re Orr* nothing that the arbitrator will have to decide for this case turns on whether arbitration is compelled under the FAA or Delaware law. But out of an abundance of caution, Amazon starts with the FAA before turning to the TOS's state-law alternative.

party opposing arbitration, plaintiffs bear the burden of establishing that the exemption applies." *Fli-Lo Falcon*, 97 F.4th at 1194. Plaintiff cannot carry that burden here.

### 1.   Plaintiff belongs to a class of same-day delivery drivers.

Because the statute speaks in terms of "class[es] of workers," 9 U.S.C. § 1, courts analyzing the FAA exemption "begin by defining the relevant 'class of workers' to which [the individual plaintiff] belongs." *Sw. Airlines Co. v. Saxon*, 596 U.S. at 455; *accord Ortiz v. Randstad Inhouse Servs., LLC*, 95 F.4th 1152, 1159 (9th Cir. 2024). This step requires focusing on *the plaintiff's own activities*. The worker in *Saxon* was a Southwest Airlines "ramp supervisor" who frequently loaded cargo onto outbound aircraft and unloaded cargo from inbound aircraft. *Saxon*, 596 U.S. at 456. Although she wanted the Supreme Court to define the relevant class of workers based on the wider range of operations of her employer, the Court explained that the plaintiff was "a member of a 'class of workers' *based on what she does at Southwest*, not what Southwest does generally." *Id.* (emphasis added). The *Saxon* Court thus "considered the specific nature of *her work*." *Ortiz*, 95 F.4th at 1159 (emphasis added). And in doing so, the Supreme Court defined the class of workers as "workers who physically load and unload cargo on and off airplanes on a frequent basis." *Id.* (quoting *Saxon*, 596 U.S. at 456).

The *Rittmann* court considered the relevant class of workers in that case as "last-mile" delivery drivers who help complete "interstate transactions between Amazon and the customer" that "do not conclude until the packages reach their intended destinations." 971 F.3d at 916. Last-mile drivers, as the Ninth Circuit understood them, perform "the last mile of the packages' interstate journeys." *Id.* The court thus construed the record before it in *Rittmann* as showing that Amazon shipped the relevant packages across state lines to its customers, with the packages only briefly pausing at an Amazon facility in the customer's home state rather than being "held at [in-state] warehouses for later sales" to its customers. *Id.* In this way, the Ninth Circuit addressed workers who, on the Ninth Circuit's description, "complete the delivery of goods that Amazon ships across state lines and for which Amazon hires [Amazon Flex] workers to complete the delivery." *Id.* at 917. *Rittmann* simply stands for the position that "[a] shipment from one state to another under a contract for continuous carriage is interstate commerce" for purposes of Section 1. *Flowers Foods*, 146 S. Ct. at 1364 (citation omitted); *see also id.* at 1366 (describing *Rittmann*'s "focus[] on whether a product has reached its 'intended destinatio[n]' under an interstate contract").

Plaintiff does not belong to a class of last-mile delivery drivers within the scope of *Rittmann*'s holding. Unlike the interstate shipments analyzed in *Rittmann*, Plaintiff's deliveries almost always involved goods stocked in inventory in Nevada—the same state as the customers purchasing them—at the time those goods were purchased and packaged for delivery. Specifically, over 94% of Plaintiff's delivery blocks were for goods picked up either from retail stores or from Amazon's "Sub Same-Day" facilities in Las Vegas. Jones Decl. ¶ 36 (stating that 34 of the 36 delivery blocks that Plaintiff completed were in the ROAR or SSD categories). These goods are part of in-state inventory awaiting later sales to in-state customers with fast, same-day delivery. Jones Decl. ¶¶ 13-14. These goods are not part of "interstate transactions between Amazon and the customer [that] do not conclude until the packages reach their intended destinations," and when Plaintiff performs these retail and same-day delivery blocks, he is not performing "the last mile of [such] packages' interstate journeys." *Rittmann*, 971 F.3d at 916. Those blocks differ from the AMZL delivery blocks at issue in *Rittmann*, which involved packages of goods warehoused in Amazon's national network of fulfillment centers, which may or may not be in the same state as the customer at the time of the order and which could conceivably require an interstate shipment to the ordering customer. Jones Decl. ¶¶ 16-17. But that type of delivery is immaterial to Plaintiff's own activities. He performed only two AMZL delivery blocks *ever*—both on a single day. *Id.* ¶ 36. Plaintiff was not a "last-mile" driver in *Rittmann*'s sense; he was a same-day delivery driver.[4]

Although the Court can and should define the FAA "class of workers" based on "the specific nature of [Plaintiff's] work," *Ortiz*, 95 F.4th at 1159, the result would not change even if the Court looked beyond Plaintiff as an individual. Plaintiff's Amazon Flex contemporaries overwhelmingly performed types of same-day local deliveries like Plaintiff's, *not* the last-mile AMZL deliveries analyzed in *Rittmann*. Specifically, in 2023, Delivery Partners in Nevada performed just 4.0% of their *total delivery blocks* within the AMZL category, compared to 70.26% of delivery blocks in the SSD category, 1.06% of delivery blocks in the ROAR category involving retail store locations, and 24.69% of delivery blocks in the GSF category involving deliveries of groceries and other locally stocked items. Nickerson Decl. ¶ 5; *cf.* Jones Decl. ¶¶ 12-23 (describing different categories of delivery blocks). In 2024, Delivery Partners in Nevada performed

---

[4] Amazon does not concede that deliveries within the AMZL category—in Nevada or elsewhere—qualify as "last-mile" deliveries as *Rittmann* or other FAA-exemption decisions have used that term. But this Court need not decide that question because AMZL delivery blocks do not define the class of workers to which Plaintiff belongs.

11.37% of their *total delivery blocks* within the AMZL category and 0.06% in the "Rural-Super-Rural" or "RSR" category, which like AMZL blocks can involve goods that may not be in the same state as the customer at the time of purchase—compared to 68.15% of delivery blocks in the SSD category, 1.56% in the ROAR category, and 18.86% in the GSF category. Nickerson Decl. ¶ 6.

*Rittmann*'s analysis is not controlling on this very different record. Under Ninth Circuit precedent, interstate transportation must be a "central part" of what the exempt workers are engaged in. *See, e.g.*, *Capriole*, 7 F.4th at 865-66 (quoting *Wallace v. GrubHub Holdings, Inc.*, 970 F.3d 798, 801 (7th Cir. 2020)). Exemption-triggering work must be "*defined by* its engagement in interstate commerce." *Id.* at 865 (emphasis added) (quoting *Wallace*, 970 F.3d at 800). A worker does not belong to a class of FAA-exempt workers "just because she *occasionally* performs that kind of work." *Id.* (emphasis added) (quoting *Wallace*, 970 F.3d at 800); *cf. Saxon*, 596 U.S. at 456 (defining the class of workers based on work that the plaintiff "frequently" performed "for up to three shifts per week"). Here, Plaintiff's two outlier blocks on a single day within the AMZL category are irrelevant to defining the class of workers to which he belongs. The central part of Plaintiff's work consists of the same-day and retail store deliveries that make up over 94% of the delivery blocks he performed with Amazon Flex and also make up the large majority of what other Nevada Delivery Partners did at the time. Plaintiff belongs to a class of local, same-day delivery drivers.

### 2. Same-day delivery workers are not directly involved in transporting goods across borders.

Once a court defines the relevant class of workers, the next question is "whether that class of workers is 'engaged in foreign or interstate commerce'" within the meaning of the FAA's exemption. *Saxon*, 596 U.S. at 455. To meet that description, the class of workers "must at least play a *direct and necessary role* in the free flow of goods *across borders*" and "be *actively engaged* in transportation of those goods *across borders* via the channels of foreign or interstate commerce." *Id.* at 458 (citations and quotation marks omitted); *accord Flowers Foods*, 146 S. Ct. at 1365.

Plaintiff's class of workers does not meet that description. It is well settled in this Circuit that same-day or next-day delivery of locally stocked retail merchandise and groceries does not count as "engag[ing] in foreign or interstate commerce" as FAA Section 1 uses that phrase. *See, e.g.*, *Shugars v. Walmart Inc.*,

No. 24-cv-2765, 2025 WL 786348, at *3-5 (N.D. Cal. Mar. 12, 2025) (same-day or next-day deliveries of groceries and other goods ordered from a local Walmart store's inventory); *Walz v. Walmart Inc.*, No. 23-cv-6083, 2024 WL 2864230, at *4-6 (W.D. Wash. June 6, 2024) (same); *Shelton v. Delivery Drivers, Inc.*, No. 22-cv-2135, 2023 WL 2629027, at *3 (C.D. Cal. Jan. 31, 2023) (same). Courts in other circuits have widely drawn the same conclusion. *See, e.g.*, *Immediato v. Postmates, Inc.*, 54 F.4th 67, 72, 78 (1st Cir. 2022) (grocery/restaurant/convenience-store deliveries of items from local stores); *Archer v. Grubhub, Inc.*, 190 N.E.3d 1024, 1027 (Mass. 2022) (restaurant/convenience-store deliveries of food and prepackaged goods); *Ross v. Subcontracting Concepts, LLC*, No. 20-cv-12994, 2021 WL 6072593, at *1, *8 (E.D. Mich. Dec. 23, 2021) (auto parts deliveries from local stores); *Young v. Shipt, Inc.*, 563 F. Supp. 3d 832, 839 (N.D. Ill. 2021) (grocery/same-day deliveries of items from local stores); *Bean v. ES Partners, Inc.*, 533 F. Supp. 3d 1226, 1236 (S.D. Fla. 2021) (same-day deliveries of pharmaceutical products from local warehouses, merchants, or pharmacies); *O'Shea v. Maplebear Inc.*, 508 F. Supp. 3d 279, 285-86 (N.D. Ill. 2020) (same-day deliveries from grocery stores).

These cases recognize that this conclusion is fully consistent with *Rittmann*'s holding on "last-mile" delivery. As discussed above, *Rittmann* addressed items selected from the shelves of a warehouse in one state, packaged for shipment, and then transported to a customer in a different state. These packages were in a "continuous interstate transportation" until they reached that customer because even if they made stops at intermediate Amazon warehouse facilities along the way, the "packages [did] not 'come to rest[]' at [those] warehouses, and thus the interstate transactions do not conclude at those warehouses." *Rittmann*, 971 F.3d at 916. Instead, "[t]he interstate transactions between Amazon and the customer do not conclude until the packages reach their intended destinations." *Id.*; *see also Fraga v. Premium Retail Servs., Inc.*, 61 F.4th 228, 241 (1st Cir. 2023) (describing how under First Circuit precedent, the FAA exemption applies when "a book … leaves an Amazon warehouse in New York headed for a particular purchaser in Massachusetts via a local Massachusetts driver who will see to it that the book completes the last mile of its interstate journey"); *Archer*, 190 N.E.3d at 1032 ("[I]n the 'last-mile driver' cases, from the moment the goods entered 'the flow of interstate commerce,' the goods were always 'destined for' the customers to whom the last-mile drivers made deliveries.").

But there is no comparable continuous interstate journey or interstate transaction within the scope of the FAA's Section 1 exemption when local drivers transport locally stocked goods "form[ing] part of a general inventory from which subsequent intrastate orders were filled." *McCatty v. Stallion Express, LLC*, 789 F. Supp. 3d 107, 118 (D. Mass. 2025) (distinguishing deliveries of *ad hoc* orders fulfilled using in-state, bulk inventory from "last-mile" deliveries, for which the customer's identity is already known when the goods begin their interstate journey). In such circumstances, the local drivers facilitate "purely local transactions that occur only after the goods have concluded their journey" across state lines. *Shugars*, 2025 WL 786348, at *5; *see also Walz*, 2024 WL 2864230, at *6 (stating that Walmart Spark drivers "are not completing the last leg of a single, unbroken trip and transaction" but are "transport[ing] local merchandise to local customers."); *Fomby v. CSC ServiceWorks, Inc.*, No. 23-cv-5317, 2024 WL 3580824, at *7 (N.D. Cal. July 29, 2024) (holding that delivering laundry equipment stored at the defendant's in-state warehouses does not trigger the FAA exemption because these "transactions take place only within the state" and there is no "single, unbroken stream of interstate commerce" (citation omitted)).

Under the FAA, there is no substantive distinction between Plaintiff's same-day deliveries of goods awaiting purchase on the shelves of an Amazon SSD facility or retail store and, as *Walz* and other courts have analyzed, a Walmart Spark Driver's deliveries of the same goods awaiting purchase on the shelves in a Walmart store. *See, e.g.*, *Walz*, 2024 WL 2864230, at *1 ("Each product that a customer purchases through Spark Driver is 'taken off the shelf in that store and bagged for delivery' by Walmart employees before being delivered."). Both types of deliveries facilitate local, same-day retail transactions.[5] Nor is there a substantive distinction under the FAA between a Delivery Partner who delivers groceries from Whole Foods and an Instacart Shopper who delivers groceries from another grocery store. *See O'Shea*, 508 F. Supp. 3d at 282-83. The transportation work is the same in all these examples: the delivery drivers go to the local facility, pick up items that the customers purchased from a retailer's in-state inventory, load the items into their car after they have been selected and packaged up for delivery, and then take the locally packaged items to those customers. *See* Jones Decl. ¶¶ 9-14, 20-21.

---

[5] Indeed, Walmart characterizes its stores as "shoppable fulfillment center[s]" that enable the company to "send [purchased] items the shortest distance in the fastest time." *See* Melissa Repko, *Walmart Is Using Its Thousands of Stores to Battle Amazon for E-Commerce Market Share*, CNBC (June 2, 2022) (quoting the chief e-commerce officer for Walmart U.S.), https://www.cnbc.com/2022/06/02/walmart-bets-its-stores-will-give-it-an-edge-in-amazon-e-commerce-duel.html.

Nothing in *Flowers Foods* undercuts this robust body of case law. On the contrary, the Supreme Court left this line of precedent undisturbed. *Flowers Foods*, 146 S. Ct. at 1366 (describing *Immediato* as "holding that intrastate couriers fulfilling take-out orders made within the State are not engaged in interstate commerce"). And shortly before *Flowers Foods*, the Supreme Court itself made clear that the FAA exemption cannot reach every worker who handles goods that "move in interstate commerce" because such an interpretation would "define the class of exempt workers in … limitless terms." *Bissonnette v. LePage Bakeries Park St., LLC*, 601 U.S. 246, 256 (2024).

In sum, Plaintiff's type of Amazon Flex deliveries did not involve the last leg of an interstate shipment from a facility in another state to Amazon customers in Nevada. Rather, his same-day delivery activities were multiple steps removed from any transportation of goods across state borders within the meaning of Section 1. His arbitration agreement is therefore not exempt from the FAA, and Sections 2, 3, and 4 of the FAA require that it be enforced.

### C. Delaware law requires enforcement of the arbitration agreement.

Even if the Court were unsure about the FAA's applicability, it would not affect the bottom line for this motion: Plaintiff must proceed to arbitration. That is because the TOS arbitration agreement is enforceable under Delaware law—as courts have repeatedly held in prior Amazon Flex cases—and the Court need not even address the FAA. *See, e.g.*, *Harper I*, 12 F.4th at 296 (holding that if the FAA-exemption analysis "leads to murky answers," a court should "assume[] § 1 applies, taking the FAA out of the agreement" and "consider[] whether the contract still requires arbitration under any applicable state law").

The Ninth Circuit has made clear that arbitration agreements are enforceable under state law even if they are (or may be) exempt from the FAA. *See Chappel v. Lab'y Corp. of Am.*, 232 F.3d 719, 725 (9th Cir. 2000); *Ortiz v. Randstad Inhouse Servs., LLC*, No. 23-55147, 2024 WL 1070823, at *2 (9th Cir. Mar. 12, 2024); *Romero*, 2021 WL 3675074, at *2. That conclusion comports with the consensus among other circuits, too. *See, e.g.*, *Harper I*, 12 F.4th at 294-96; *Sherwood v. Marquette Transp. Co., LLC*, 587 F.3d 841, 843 (7th Cir. 2009).

Delaware state law furnishes a basis for compelling arbitration under the TOS regardless of whether the TOS is exempt from the FAA. *See, e.g.*, *Walker*, 809 F. Supp. 3d at 760 ("[E]ven assuming the [FAA]

does not apply, Delaware law governs and Amazon's motion to compel is granted."); *McBratnie II*, 2025 WL 2048328, at *6 ("Irrespective of whether McBratnie could be compelled to arbitrate under the FAA, … she may be compelled to arbitrate under Delaware law."); *McBratnie I*, 2025 WL 2237367, at *5 ("[T]he Court … need not resolve the Section One exemption issue here in the first instance because, even if the exemption applied to McBratnie as an Amazon Delivery Partner and she could not be compelled to arbitrate *under the FAA*, she would still be subject to arbitration *under state law*."); *Melikyan*, 2023 WL 4505065, at *3 ("[T]he court need not determine whether plaintiff is exempt from the FAA … because [Delaware] law is also applicable to the [Amazon Flex TOS]."); *Harper v. Amazon.com Servs. Inc.*, No. 19-cv-21735, 2022 WL 17751465, at *7 (D.N.J. Dec. 19, 2022) (*Harper II*) (applying state law to compel arbitration under an earlier version of the Amazon Flex TOS without deciding the applicability of the FAA exemption); *cf. Harper I*, 12 F.4th at 294-96 (ruling that a district court was *obligated* to decide whether the TOS was enforceable under state law before it could order discovery into the potential applicability of the FAA exemption).

The TOS states that Delaware law governs the arbitration provision in Section 11 of the agreement "[i]f, for any reason, the [FAA] is held by a court of competent jurisdiction not to apply." TOS v.13 § 12; *accord* TOS v.12 § 12; TOS v.11 § 12. This choice-of-law provision is enforceable under applicable choice-of-law principles, which strongly support choice-of-law provisions. *See, e.g.*, *Pentax Corp. v. Boyd*, 904 P.2d 1024, 1026 (Nev. 1995) ("[P]arties are permitted within broad limits to choose the law that will determine the validity and effect of their contract." (citation omitted)). Here, there is a substantial relationship between Delaware and the TOS because Defendants are incorporated in Delaware. Am. Compl. ¶ 2; ECF No. 1-1, ¶¶ 2-3; *see, e.g.*, *Benson Pump Co. v. S. Cent. Pool Supply, Inc.*, No. 02-cv-414, 2006 WL 845775, at *7 (D. Nev. Mar. 28, 2006) (recognizing that a state has a substantial relationship to a contract when one of the contracting parties is incorporated there). And applying Delaware law to enforce the TOS arbitration provision is fully consistent with Nevada public policy, which favors enforcing arbitration provisions—as the Ninth Circuit and courts in this District have recognized. *See, e.g.*, *Romero*, 2021 WL 3675074, at *2 (enforcing FAA-exempt arbitration agreement under Nevada law); *Blackman v. Aaron's Co. Inc.*, No. 23-cv-1248, 2024 WL 1053152, at *2 (D. Nev. Feb. 14, 2024) (enforcing arbitration agreement under Nevada law without resolving whether it was exempt from the FAA); *Reno v. W. Cab*

*Co.*, No. 18-cv-840, 2020 WL 5606897, at *6 (D. Nev. Sept. 18, 2020) (enforcing FAA-exempt arbitration agreement under Nevada law). Moreover, any challenge that Plaintiff might raise to the Delaware choice-of-law provision could not furnish a basis for denying this motion. Such a challenge would be reserved exclusively for the arbitrator to decide because of the TOS's delegation clause. *See, e.g.*, *Ratajesak v. New Prime, Inc.*, No. 18-cv-9396, 2019 WL 1771659, at *5 (C.D. Cal. Mar. 20, 2019) (enforcing FAA-exempt arbitration agreement under Missouri law without resolving plaintiffs' challenges to the Missouri choice-of-law provision because of the contract delegated arbitrability to the arbitrator).

There is no reason, then, not to enforce the Amazon Flex TOS and compel arbitration under Delaware law. Every court to decide the issue has done so. *See Walker*, 809 F. Supp. 3d at 760; *McBratnie II*, 2025 WL 2048328, at *6; *McBratnie I*, 2025 WL 2237367, at *5-6; *Melikyan*, 2023 WL 4505065, at *2-3. Much like federal law under the FAA, "[t]he public policy of [Delaware] favors the resolution of disputes through arbitration." *Graham v. State Farm Mut. Auto. Ins. Co.*, 565 A.2d 908, 911 (Del. 1989) (citation omitted). Delaware carried out that pro-arbitration policy when it "enacted a Uniform Arbitration Act" that is "similar to the [FAA]." *Id.* (citing Del. Code tit. 10, §§ 5701-5725). Under this state statute, like the FAA, "[a] written agreement to submit to arbitration any controversy existing at or arising after the effective date of the agreement is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract." Del. Code tit. 10, § 5701. And as with the FAA, "[a]ny doubt as to arbitrability is to be resolved in favor of arbitration." *SBC Interactive, Inc. v. Corp. Media Partners*, 714 A.2d 758, 761 (Del. 1999). Delaware's arbitration statute, however, has no exemption for transportation workers. So, courts do not hesitate to enforce arbitration provisions that are, or may be, exempt from the FAA when the contract specifies Delaware state law as a fallback to the FAA. *See, e.g.*, *Walker*, 809 F. Supp. 3d at 760; *McBratnie II*, 2025 WL 2048328, at *6; *McBratnie I*, 2025 WL 2237367, at *5-6; *Melikyan*, 2023 WL 4505065, at *3; *Haider v. Lyft, Inc.*, No. 20-cv-2997, 2021 WL 3475621, at *4 (S.D.N.Y. Aug. 6, 2021) (enforcing FAA-exempt agreement under Delaware choice-of-law provision).

The *Walker* case from the Northern District of Ohio, *McBratnie* case from the Eastern District of Michigan, and *Melikyan* case from the Central District of California are directly on point. In those cases, just as here, an Amazon Flex Delivery Partner sued Amazon in court despite having agreed to arbitrate through the TOS. *See Walker*, 809 F. Supp. 3d at 754; *McBratnie II*, 2025 WL 2048328, at *1; *Melikyan*,

2023 WL 4505065, at *1. The courts held that given the TOS's Delaware choice-of-law provision, it is proper to enforce the TOS arbitration provision by compelling arbitration and staying the litigation under Delaware state law, regardless of whether the plaintiffs' contracts are exempt from the FAA under 9 U.S.C. § 1. *Walker*, 809 F. Supp. 3d at 760; *McBratnie II*, 2025 WL 2048328, at *6, *8; *Melikyan*, 2023 WL 4505065, at *1, *3.

Because there is no basis not to enforce Plaintiff's agreement under Delaware law, the Court has a straightforward path to compel arbitration without having to resolve whether the agreement is exempt from the FAA. *See, e.g.*, *Blackman*, 2024 WL 1053152, at *1 ("I do not need resolve [the FAA exemption] issue because even if the FAA does not apply, the arbitration agreement is enforceable under [state] law.").

## IV.  **CONCLUSION**

For all these reasons, the Court should compel Plaintiff to arbitrate his dispute on an individual basis in accordance with his agreement and stay this litigation pending arbitration.

DATED:  July 29, 2026

GREENBERG TRAURIG, LLP

By:  */s/ Jason Hicks*

Jason Hicks
Nevada Bar No. 13149
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
Jason.Hicks@gtlaw.com

Attorneys for Defendants
AMAZON LOGISTICS, INC. and
AMAZON.COM, INC

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 29th day of July 2026, a true and correct copy of the foregoing was filed electronically via the Court's CM/ECF system. Notice of filing will be served on all parties by operation of the Court's EM/ECF system, and parties may access this filing through the Court's CM/ECF system.

*/s/  Andrea Lee Rosehill*
An employee of GREENBERG TRAURIG