LEON GREENBERG, ESQ., SBN 8094
RUTHANN DEVEREAUX-GONZALEZ, ESQ., SBN 15904
Leon Greenberg Professional Corporation
1811 South Rainbow Blvd- Suite 210
Las Vegas, Nevada 89146
(702) 383-6085
(702) 385-1827(fax)
leongreenberg@overtimelaw.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

ANDREW SPINNEY, Individually and on behalf of a class of all similarly situated persons,

Plaintiffs,

-v-

AMAZON LOGISTICS, INC. and AMAZON.COM, INC.,

Defendants.

Case No.:2:25-CV-1803-RFB-DJA

**PLAINTIFF'S OPPOSITION TO DEFENDANT AMAZON'S SECOND RENEWED MOTION TO COMPEL ARBITRATION AND STAY LITIGATION**

Plaintiff ANDREW SPINNEY Individually and on behalf of others similarly situated, by and through his attorneys, Leon Greenberg Professional Corporation, submits this Opposition to defendants Amazon Logistics, Inc. and Amazon.Com, Inc. to compel arbitration and stay litigation.

# MEMORANDUM OF POINTS AND AUTHORITIES

## Summary

**The Ninth Circuit has held, post-*Rittman*, the FAA § 1 exemption includes Amazon flex drivers such as the plaintiff; Amazon's arbitration agreement is not enforceable under Nevada law and Delaware law does not apply.**

Amazon asks the Court to err by ignoring both controlling Ninth Circuit precedent and Nevada law. Specifically:

(1) *Rittman's* holding on the Federal Arbitration Act's ("FAA") § 1 exemption, *does apply* to Amazon's Flex drivers such as the plaintiff who are "engaged to deliver packages from out of state" even if they may overwhelmingly perform just local, intrastate, deliveries. Amazon fails to advise the Court of the decision in *Miller v. Amazon.com, Inc.,* 2023 WL 5665771 (9th Cir. 2023), relying on *Rittman* and *Carmona v. Domino's Pizza*, 73 F.4th 1135 (9th Cir. 2023), rejecting the exact same argument Amazon now makes to this Court involving the supposedly "very different record" from *Rittman* presented in this case. Plaintiff is subject to the FAA § 1 exemption.

(2) Nevada uses a two or four part test to determine whether a contract otherwise subject to Nevada law contains an enforceable non-Nevada choice of law provision. Amazon's Flex contracts' Delaware choice of law provision fails all parts of that test. Delaware has no "substantial relationship" to the parties' transactions; that choice of law provision would also allow Amazon to evade Nevada's public policy barring the enforcement of arbitration agreements prohibiting class actions; and Amazon procured that choice of law provision in bad faith and for the express purpose of evading the Nevada law otherwise applicable to the situs of those contracts. Nevada's law, not Delaware's, governs the enforceability of the arbitration provision.

(3) The Nevada Supreme has held arbitration agreements containing class action waivers are unenforceable when they violate "....Nevada's strong public policy in favor of class action suits." *Picardi v. Eighth Jud. Dist. Ct.*, 251 P.3d 723, 727 (Nev. Sup. Ct. 2011). As in *Picardi,* Amazon's arbitration agreement, barring any class action enforcement of small value Nevada minimum wage claims (plaintiff's estimated

claim being less than $1,200 with virtually all class members having similar low value claims), violates Nevada's public policy and is unenforceable.

## ARGUMENT

### I. The Federal Arbitration Act's § 1 exemption applies and that issue must be determined by this Court not delegated to an arbitrator.

Amazon ignores, and does not advise this Court of, controlling precedents establishing that (a) This Court, not an arbitrator, must determine whether Amazon's contracts with its Nevada Flex drivers are subject to the FAA § 1 exemption; and (b) That binding Ninth Circuit precedent has held they are subject to such exemption.

#### A. The Court must determine if the FAA § 1 exemption applies even if the contract delegates that decision to an arbitrator.

Amazon claims that because the plaintiff "agreed to arbitrate on an individual basis" and "agreed to delegate disputes over arbitrability to the arbitrator" the Court "need not conduct further inquiries" since "the contracting parties delegated arbitrability questions to the arbitrator to resolve." ECF 41, p. 7, l. 14 - p. 9, l. 11. Nowhere does Amazon mention *New Prime Inc. v. Oliveira*, 586 U.S. 105, 112 (2019), requiring that the application of the FAA § 1 exemption — whether a contract to arbitrate subject to the FAA even exists — must be resolved by this Court and a contract's delegation to an arbitrator to decide that question is not enforceable.[1]

---

[1] This argument by Amazon is made in bad faith or results from a failure of their counsel to examine the arbitration agreement at issue. It references § 11(i) of TOS v. 13 — the agreement at issue — when insisting the parties' delegated to an arbitrator the power to determined whether the dispute in this case is subject to arbitration. But they ignore the controlling clause on that issue at § 11(j) stating:

> Notwithstanding any provision in the AAA rules, the parties agree that a court of law must resolve any dispute concerning the validity and enforceability of the Agreement as a whole, the applicability of any exemption to the Federal Arbitration Act, and the validity, enforceability or interpretation of the provisions in subsections b) through I) [including the class action waiver] of this Section 11.

### B. It is settled law in the Ninth Circuit that Amazon's Flex drivers are subject to the FAA § 1 exemption, including under the current circumstances discussed by Amazon.

Since the decision in *Rittman v. Amazon.com, Inc.*, 971 F.3d 904 (9th Cir. 2020), Amazon has waged an unrelenting, and wholly unsuccessful, campaign to convince courts within the Ninth Circuit that its Flex drivers now work under conditions different from those in *Rittman* and are no longer subject to the FAA § 1 exemption. Like an alchemist, it seeks to transmute its Flex drivers, who are engaged in interstate transportation as found in *Rittman*, into workers performing the delivery of locally produced or sold goods, such as restaurant prepared meals, as in *Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798 (7th Cir. 2020) and similar cases (the "*Grubhub* cases"). It now brings that campaign to this Court ignoring, and not advising the Court, of the Ninth Circuit's previous rejections of Amazon's arguments about the scope of *Rittman's* holding.

Amazon argues that *Rittman* based its holding on Flex drivers performing "AMZL" deliveries where the goods delivered "may or may not be in the same state as the customer at the time of the order" whereas plaintiff, and the putative class members, overwhelmingly performed deliveries of goods that were already located within Nevada when ordered by customers. Motion, p. 13, l. 1 - p. 14, l. 17. Amazon urges that distinction — between the delivery of goods traveling interstate to a specific known customer and those that traveled to a Nevada warehouse where they "came to rest" before being ordered by, and delivered to, a specific customer — takes this case outside of *Rittman's* holding. *Id.* As the Ninth Circuit has made clear, it does not.

In *Carmona Mendoza* the employer, Domino's Pizza, made the exact same

---

The parties' contract committed them to having this Court, not an arbitrator, determine whether the arbitration agreement's class action waiver is enforceable. Nevada law also requires this Court decide that issue as agreed to by the parties in that contract. *See, Las Vegas Police Protective Ass'n v. City of Las Vegas,* 590 P.3d 914, 917 (Nev. Sup Ct. 2026) *citing* NRS 38.219(2).

argument now made by Amazon. Domino's shipped goods to supply its franchisees from out-of-state to its California warehouse. 73 F.4th at 1136. Only after those goods arrived at that location are they subsequently measured, packaged, ordered by, and delivered to, franchisees within California. *Id.* Domino's insisted "....that *Rittman* does not control because, unlike [the] Amazon customers [in *Rittman*], Domino's franchisees do not order the goods until they arrive at the warehouse." 73 F.4th at 1138. *Carmona Mendoza* rejected that argument, finding the relevant issue under *Rittman* is not "how the purchasing order is placed" or that the goods at issue came to rest at an in-state warehouse. *Id.* Rather, "[b]ecause the goods in this case were inevitably destined from the outset of the interstate journey for Domino's franchisees, it matters not that they briefly paused that journey at the Supply Center." *Id.*

The circumstances of this case are indistinguishable from *Carmona Mendoza*. Amazon sells, by direct delivery, goods to customers that travel in interstate commerce. That is exactly what Domino's did in *Carmona Mendoza* for its customers (its franchisees). Amazon's placement of its goods in a Nevada warehouse, after an interstate travel to await subsequent delivery to (and ordering by) its customers changes nothing for purposes of *Rittman.* Its Amazon Flex drivers delivering those goods in this case, as in *Rittman*, are subject to the FAA § 1 exemption, as in *Carmona Mendoza* with the Ninth Circuit expressly advising Amazon of the same in *Miller v. Amazon.com, Inc.,* 2023 WL 5665771 (9th Cir. 2023). Amazon does not mention either *Carmona Mendoza* or *Miller* in its motion — much less try to distinguish them.

In its reply, Amazon may insist this case is distinguishable from *Carmona Mendoza*, *Miller,* and *Rittman*, and the proper "class" of workers at issue for FAA § 1 purposes are purely "local" intrastate delivery drivers, such as in the *Grubhub* cases. It will, again, reiterate that the individual plaintiff's deliveries, and those of other Nevada Flex drivers, are just local in nature, insisting they are no different than those of local retail delivery drivers for restaurants or supermarkets. That is untrue and applies the wrong analysis as to what constitutes the "class" of drivers at issue.

The "class" of workers for FAA § 1 purposes is not controlled by the "local" nature of their activities but must also consider "...the nature of the business for which a class of workers perform their activities..." — in this case Amazon's "business" of delivering goods traveling interstate to its customers. *Rittman*, 971 F.3d at 917, *citing and quoting Waithaka v. Amazon.com, Inc.,* 966 F.3d 10, 18 (1st Cir. 2020). To the extent plaintiff and other Nevada Amazon Flex drivers may have performed some deliveries that were not part of Amazon's interstate business itself — such as delivering goods from a local retailer or restaurant — that work does not change the "class" of workers analysis for FAA § 1 purposes. *See, Miller,* 2023 WL 5665771 p.1 (Amazon Flex drivers — despite also performing some purely locally connected deliveries involving groceries or similar things — have "one contract of employment which governs all of their work" and they remain a class subject to FAA § 1 because that contract includes performing Amazon's interstate delivery of goods).

The "class of workers" analogy that Amazon seeks to draw to the *Grubhub* cases is without merit. In those cases all of the drivers are delivering locally created products (restaurant meals) or delivering for in-state retail business locations such as supermarkets where customers can also walk in and purchase the same goods off the shelf themselves.[2] The *Grubhub* case drivers' contracts of employment encompass only those sort of purely local, not interstate, deliveries. Those contracts are not with a party, such as Amazon, that is also employing drivers to conduct its business of delivering goods interstate to locations specified by its customers.

---

[2] Amazon also cites *Fomby v. CSC ServiceWorks, Inc,* 2024 WL 3580824, at *7 (N.D. Cal. July 29, 2024), which was not a *Grubhub* type case. *Fomby* distinguished its circumstances from those of *Rittman* based on the plaintiff's failure to present "...any evidence that his delivery of Defendant's equipment was the "last leg" of an interstate shipment...." *Id.* *Rittman, Miller*, *Carmona Mendoza*, and the facts conceded by Amazon in its motion, all establish plaintiff and the other Amazon Nevada Flex drivers are such "last leg" drivers subject to the FAA § 1 exemption.

## II. The arbitration agreement's choice of Delaware law if an FAA § 1 exemption exists is unenforceable and Nevada law is controlling.

Amazon is correct that in the absence of FAA jurisdiction (and there is none in this case) state law governs whether it may enforce the arbitration agreement. It errs by insisting the agreement's designation of Delaware law to resolve that dispute is enforceable under Nevada's choice of law jurisprudence. It is not.

### A. Nevada applies a two-element (or four-element) choice of law enforcement test; all of those elements must be satisfied to enforce a contractual choice of law provision.

Amazon represents *Pentax Corp v. Boyd,* 904 P.2d 1024, 1026 (Nev. Sup. Ct. 1995) as holding, without explaining its qualifications, that " ' [P]arties are permitted within broad limits to choose the law that will determine the validity and effect of their contract. (citation omitted).' " Motion, p. 18, l. 17-19. Amazon omits that citation and *Pentax's* discussion of those "limits" on enforcing a contract's choice of law that establish its Flex contract's choice of Delaware law is unenforceable.

The citation omitted by Amazon from *Pentax* was to *Sievers v. Diversified Mtg. Investors,* 95 Nev. 811, 815, 603 P.2d 270, 273 (Nev. Sup. Ct. 1979). *Pentax* in that citation to, and its quotations from, *Sievers* held that *"Sievers* imposed two requirements for the validity of a choice of law provision." 904 P.2d at 1026. Those requirements are that " 'The situs fixed by the agreement ... must have a substantial relation with the transaction, and the agreement must not be contrary to the public policy of the forum.' " *Id. quoting Sievers*, 603 P.2d at 273. *Sievers* also qualified enforcement of a choice of law provision upon two additional considerations, that "....the parties acted in good faith and not to evade the law of the real situs of the occurrence." *Id. Pentax,* in discussing a two-element test, effectuated a *de facto* incorporation of the *Sievers* "good faith" and "not to evade the law of the real situs of the occurrence" considerations into such two elements.

*Pentax* held that all of the requirements of the standard set forth in *Sievers* must be met for a choice of law provision to be enforced, as they were so met in *Pentax*. 904

P.2d at 1026. *See, also, Engel v. Ernst*, 724 P.2d 215, 217 (Nev. Sup. Ct. 1986) (citing *Sievers* and, because both requirements of *Sievers* were met, reversing district court's refusal to enforce choice of law provision). Since Amazon cannot meet *any* of those two (or four) *Sievers* requirements the Delaware choice of law provision is unenforceable and Nevada law must be applied.

**B. The choice of law provision is unenforceable because Delaware has no "substantial relationship" to the parties' transactions.**

The Delaware choice of law provision is unenforceable as the transactions between Amazon and its Nevada Flex drivers have no "substantial relationship" — or any relationship — to Delaware. Indeed, Amazon espouses at length (irrelevantly) as to how the plaintiff's and its other Nevada Flex drivers' activities for Amazon are conducted solely within the State of Nevada. Amazon just insists, citing *Benson Pump Co. v. S. Cent. Pool Suppl, Inc.,* 2006 WL 845775 at p. 7 (D. Nev. 2006), that because it is incorporated in Delaware such a sufficiently "substantial relationship" exists with Delaware to render the choice of law provision enforceable. Motion, p. 18, l. 19-23. That is untrue and Amazon's parenthetical description of *Benson Pump* (the only case it cites on that issue), to the effect such a "substantial relationship" is established simply because "one of the contracting parties" is incorporated in the state of the chosen law is inaccurate.

*Benson Pump* did not enforce under Nevada law a contract's choice of law provision (in that case Illinois law) based solely on a contracting party's incorporation in Illinois. The contract at issue also covered the sale of certain assets in Illinois and the parties also conducted business (signed their contract) in Illinois. *Id. Benson Pump* also cited to *Pentax*, where there was also other evidence, beyond mere "incorporation venue" supporting the Colorado choice of law provision — the headquarters of a contracting party was in Colorado and that was where the goods that were the subject of the dispute were shipped from. 904 F.2d at 1026.

Every Nevada state court decision finding a sufficiently "substantial

relationship" existed to enforce a choice of law provision involved, as in *Pentax,* transactions in — not mere incorporation in — the chosen state. *See, Progressive Gulf Ins. Co. v. Faehnrich*, 337 P.3d 1061, 1062 (Nev. Sup. Ct. 2014) (Insurance policy at issue was initially issued when insured resided in Mississippi); *Sievers*, 603 P.2d at 272-273 (Business borrower had to secure out-of-state financing with interest rate higher than that allowed by Nevada law; loan was executed in Massachusetts where lender was based, where loan funds were disbursed from, and where borrower's payments were made); *Engel*, 724 P.2d at 217 (Party's headquarters was in, and its operational instructions came from, Colorado and opposing party also traveled there as part of its dealings); *Doucettperry v. Doucettperry*, 473 P.3d 63 (Table), 2020 WL 6445845 p. 3 (Nev. Ct. App. 2020) (Parties had resided in Virginia and executed agreement there); *Sotirakis v. United Service Auto. Ass'n,* 787 P.2d 768, 789, 790 (Nev. Sup. Ct. 1990) (No choice of law was specified by contract but California law applied as that is where insured resided, registered vehicle, and purchased insurance policy); and *Sullivan v. Sullivan,* 481 P.3d 238 (Table) 2021 WL 734591, p. 3 (Nev. Ct. App. 2021) (It was error not to apply Arizona law to pre-martial agreement as that was situs of marriage and residence during marriage).

It is apparent that "incorporation alone" cannot meet the *Sievers* standard. If it could the "substantial relation ***with the transaction***" standard of *Sievers* would be rendered meaningless, as the situs of a party's "incorporation" has no "transactional" relationship with any other party. It must also be understood that Nevada, in *Sievers* and subsequent cases, while discussing the *Restatement (Second) of Conflict of Laws § 187,* has ***not*** completely adopted its provisions on this point. Amazon, in reply, may erroneously look to § 187(2)(a), providing that a contractual choice of law will be applied, unless:

> (a) the chosen state has no substantial relationship to the parties ***or*** the transaction.... (emphasis provided).

The disjunctive "or" in § 187(2)(a) renders the precedents looking to the

Restatement that Amazon may cite in reply, such as *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 467-69 (Cal. Sup. Ct. 1992), inopposite. The Restatement recognizes that a "substantial relationship" for choice of law enforcement purposes can be established by the "parties" relationship to the chosen state — as Amazon now argues based on its incorporation in Delaware. Nevada, under *Sievers*, does not consider a party's "substantial relationship with the chosen state, only the chosen state's "substantial relation with the transaction" at issue. Delaware has no relationship to the parties' transaction in this case (Amazon alleges none) and the contract's choice of law provision is unenforceable.

**B. The choice of law provision is unenforceable because it violates the public policy of Nevada, was not made in good faith, and was procured by Amazon to avoid Nevada law.**

The Delaware choice of law provision, as discussed in detail *infra,* is also unenforceable because it would result, by application of Delaware law, in a violation of Nevada's strong public policy favoring class action lawsuits. It is also apparent that choice of law provision was not procured by Amazon in good faith but for the express purpose of evading the law of Nevada — the true situs of the parties' contract — in violation of *Sievers*.

*Rittman* was commenced in 2014 in the United States District Court for the Western District of Washington. Relevant disclosures in both *Rittman* and elsewhere indicate that Amazon, prior to 2019, did not include in its Amazon Flex contracts a Delaware choice of law provision if the FAA was found to be inapplicable to such contracts' arbitration clauses. *See, Rittman,* Case 16-cv-1554, Doc. 352, p. 12, l. 18-19, Amazon asserting in a motion opposition that all Amazon Flex drivers "...who contracted with Amazon in 2019 and beyond have signed arbitration agreements with Delaware choice of law provisions..." and *McBratnie v. Amazon.Com, Inc.*, 2025 WL 2237367 (E.D. Mich. 2025) (Plaintiff worked from 2018 to 2024 as an Amazon Flex driver and started under a contract with Washington choice of law that was changed to Delaware).

In 2019 Amazon responded to the *Rittman* district court's finding its Amazon Flex contracts were subject to the FAA § 1 exemption, 363 F.Supp.2d 1196 (W.D. Wash. 2019), by placing a Delaware choice of law provision in those contracts. It did so to lock in Delaware law as a fallback to protect those agreements' arbitration provisions waiving class action rights — and to prevent the application of other state's laws, such as Nevada's, that might refuse to enforce those class action waivers. It expressly did so for the bad faith purpose of evading the law (of Nevada and all other states) of the true situs of such contracts — conduct that renders such Delaware choice of law provision unenforceable under *Sievers*.

**III. The arbitration agreement's waiver of class actions is unenforceable as it violates Nevada's public policy of favoring class actions.**

Nevada law is clear: Arbitration agreements that waive class action rights, both in arbitration and in litigation, are unenforceable as they violate Nevada's public policy. *Picardi,* in the concluding sentence of its last paragraph discussing its reasoning, unequivocally so held:

> Therefore, we hold that the class action waiver within the Picardis and United Hyundai's arbitration agreement is unenforceable because it violates Nevada's public policy favoring class actions by prohibiting class status in both litigation and arbitration. 251 P.3d at 728.

Amazon in reply will likely argue (1) *Picardi* must be cabined to cases involving small value individual consumer claims and has no application to cases involving unpaid minimum wage claims — even if those claims are of the same individual small value as in *Picardi*; and (2) Subsequent post-*Picardi* pronouncements by the Nevada Supreme Court or in other decisions establish a broad Nevada public policy favoring arbitration and require enforcement of class waivers in arbitration agreements in this case and all cases that are not within the narrow "small consumer claims" circumstances of *Picardi*. Both assertions are without merit.

### A. *Picardi* is the *only* decision of the Nevada Supreme Court on whether Nevada law bars enforcement of a class action waiver in an arbitration agreement; it cannot be reasonably understood to allow enforcement of the class action waiver in this case.

*Picardi* constitutes the totality of Nevada's jurisprudence on whether Nevada law limits the enforcement, on public policy grounds, of arbitration agreements waiving class actions, whether in an arbitration or judicial forum. The enforceability of such waivers, under Nevada law, has never otherwise been addressed by the Nevada Supreme Court. The subsequent case of *Tallman v. Eighth Jud. Dist. Ct.*, 359 P.3d 113 (Nev. Sup. Ct. 2015) extensively discussed *Picardi* — but only to discuss what it held, the basis for its holding, and to recognize Nevada, through *Picardi,* had adopted the *Discover Bank* rule, *Discover Bank v. Superior Court,* 113 P.3d 1100 (Cal. Sup. Ct. 2005). 359 P.3d at 121. It then went on to explain Nevada's power to apply the *Discovery Bank* rule to arbitration agreements subject to the FAA (such as those at issue in both *Discover Bank* and *Picardi*) had been abrogated by *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011). 359 P.3d at 121-22.

*Tallman* says ***nothing***, not even in *dicta,* about the contours of *Picardi's* unequivocal holding that Nevada's public policy favoring arbitration must give way to the stronger Nevada public policy favoring class actions. What *Tallman* does confirm is *Picardi* resulted in Nevada adopting the *Discover Bank* rule prohibiting, as unconscionable contracts of adhesion, arbitration agreements waiving class action rights when "...the amounts involved are too small to be challenged individually, such that enforcing a class waiver allows the stronger party to escape liability. *Tallman,* 359 P.3d at 120, *citing Discover Bank,* 113 P.3d at 1109.

As *Picardi* noted, it was not questioning or even examining Nevada's public policy of enforcing arbitration agreements — it was making a broad determination about Nevada's public policy favoring class actions and Nevada's refusal to judicially enforce agreements limiting class actions:

> Because we hold that the arbitration agreement in this case is unenforceable, we need not address the public policy that favors enforcement of valid arbitration agreements. What does warrant discussion, however, is Nevada's strong public policy in favor of class action suits. 251 P.3d at 727.

*Picardi* then went on to explain that Nevada's public policy in favor of class action suits was confirmed by its own recent jurisprudence, citing such cases and finding "[t]his recent caselaw further evinces Nevada's strong public policy in favor of class actions in order to provide multiple plaintiffs, who individually may have a valid but small claim, an adequate remedy at law." *Id.*

It would be erroneous for the Court to cabin *Picardi* to "small consumer claims" and no other disputes. While *Picardi* in its reasoning repeatedly mentions it was dealing with a consumer claim, such mention is just a *pro forma* recital of the case at bar. The "consumer" status of the claim in *Picardi* has nothing to do with its reasoning or define the scope of its holding. *Picardi's* holding is clear: Nevada's public policy favors class actions, and denies enforcement of class action waivers for the reasons articulated in the *Discover Bank* rule for all persons holding smaller value claims (not just consumers). It does so because enforcing such waivers would deny those persons any effective remedy as such claims are only sensibly pursued on a class basis and such enforcement would allow wrongdoers to evade their legal liabilities.

The dispute in this case is indistinguishable from the dispute at issue in *Picardi* in respect to *Picardi's* underlying reasoning. In *Picardi* the itemized damages at issue for the individual plaintiffs were estimated to be less than $1,500. 251 P.3d at 725. In this case, involving Nevada's very modest minimum wage payment requirements, the plaintiffs' damages are reasonably estimated to be less than $1,200 and not to involve even $2,000 of unpaid minimum wages. Ex. "A" declaration with supporting documentation. Nevada's public interest in enforcing the legal rights at issue in this case should also be presumed to be more paramount than in *Picardi*, seeking relief under statute while this action is predicated on the minimum wage rights conferred directly by Nevada's Constitution. The legal obligations Amazon has evaded are not

practically redressed, either for the plaintiff or any of the thousands of other persons who have had their Nevada minimum wage rights violated by Amazon, except through a class action process.

*Picardi* is controlling and Amazon cannot enforce its arbitration agreement's class action waiver.

**B. The two decisions opining *Picardi* is limited in scope have <u>no precedential force and reached erroneous understandings.</u>**

Amazon has cited *Romero v. Watkins & Shepard Trucking, Inc.* 2021 WL 3675074 (9th Cir. 2021) as finding Nevada law would enforce an employment (as opposed to a *Picardi* consumer transaction) arbitration agreement class action waiver. *Romero* is not precedent and is not properly relied upon by this Court for anything. And even if it was properly considered, it is not persuasive as: (1) The plaintiff asserted, in an inadequate fashion ("without supporting evidence") a potential claim for $12,500 — an amount beyond the scope of what is at issue in this case or *Picardi;* (2) Most of its analysis concerned the *Discover Bank* rule of California law, as refined by *Gentry v. Superior Court*, 165 P.3d 556 (Cal. Sup. Court 2007), only addressing Nevada law as an afterthought (and questioning whether the Nevada law issue had been raised by plaintiff). Of significance under that analysis was the existence of an "opt-out" from the arbitration agreement that was available to the plaintiff in *Romero* — something *not* available to the plaintiff in this case and under Amazon's Flex contracts; (3) Its brief, concluding, five sentence discussion of Nevada law and *Picardi* misconstrues *Picardi*. It quotes from *Picardi's* introductory summary (describing the precise dispute brought before the Court on a writ petition and its disposition) and a sentence noting the importance of class actions in resolving small consumer claims. It ignores *Picardi's* recital that the basis for its decision comes from Nevada's *other* class action decisions that it finds establish a need "...to provide multiple plaintiffs, who individually may have a valid but small claim, an adequate remedy at law."; and (4) It improperly faulted the plaintiff, finding "Romero identifies no case expanding *Picardi*

beyond small consumer class actions....” The totality of Nevada law on the subject of class action waivers is contained in *Picardi* which says *nothing* about restricting its holding to consumer cases. In the absence of any other Nevada Supreme Court decisions upholding such waivers, there should be no presumption *Picardi* is so restricted.

The other decision relied upon by Amazon[3] was in *Reno v. Western Cab Co.*, 2020 WL 5606897 (Dist. Nev. 2020). The misreading in *Reno* of *Tallman*, based upon an completely unwarranted extension of a footnote, is manifest:

> “While a person's right to minimum wage is unwaivable, Nev. Const. art. 15, § 16, he may validly enter into an arbitration agreement that sets ‘not only the situs of suit but also the procedure to be used in resolving’ ” it. *Reno* p. 4, quoting *Tallman* 359 P.3d at 122 n.3.

*Reno* then goes on to hypothesize, based on this footnote, that it would “predict” that the Nevada Supreme Court would enforce a class action waiver in an employment arbitration agreement. *Id.* That prediction ignores both what *Tallman* was discussing in the section where that footnote appears and that the footnote says — discussing that

---

[3] The Court is also advised of *Kissinger v. Schnieder National Carriers, Inc.,* 834 F. Supp. 3d 911, 933-938 (C.D. Cal. 2026). *Kissinger* notes and agrees with, without conducting any actual analysis of *Picardi*, the conclusions in *Reno* and *Romero.* But it also went on to hypothesize that Nevada might alternatively require the detailed analysis directed by *Gentry* and found that analysis, in the case before it, established the a valid class waiver existed. If the Court were to conduct the four *Gentry* factors analysis — examining the (1) modest size of the class members' recoveries; (2) potential for retaliation against the class members; (3) lack of knowledge among the class members of their rights; and (4) other real world obstacles obstructing the vindication of those rights, 165 P.3d at 556 — it would find all of those factors fulfilled. Unlike in *Kissinger, Romero* or *Reno* none of the class members are even recognized as employees by Amazon, so they have no presumptive knowledge of any right to a minimum age. The modest size of their claims is established. The potential for retaliation — a refusal by Amazon to give them future work — is obvious as is the real world obstacles to them individually pursuing their small value claims. In the event that the Court finds that a more detailed *Gentry* type analysis is needed the plaintiffs ask leave to present a further record/supplemental briefing addressing the same.

a "class action" is not a substantive right abridged by the FAA's enforcement of a class action waiver and that arbitration may be validly used to resolve Nevada Constitutional minimum wage claims. That predication also ignores what *Tallman* never addressed or questioned: Nevada's public policy, as found by *Picardi,* prohibits enforcement of class waivers in *both* arbitration and judicial forums. The referenced footnote in *Tallman* only supports (if that) the proposition that an arbitration agreement could only allow, under Nevada law, class arbitration of claims and validly bar prosecution of class claims in a judicial forum. It provides no support for *Reno's* conclusion it wholly overrode *Picardi's* finding that *all forms* of class actions (in both arbitration and judicial proceedings) cannot be validly waived.

## IV. The arbitration agreement cannot be enforced to the extent it bars the plaintiff from seeking equitable or public injunctive relief.

### A. If the Court finds the class action waiver enforceable, it should defer consideration of the public injunction question until it can be separately and more fully briefed to the Court.

Amazon's Flex driver contracts specifically prohibit arbitration of any request for public injunctive relief. As part of its motion to compel arbitration, Amazon asserts public injunctive relief is unavailable to the plaintiff and that claim for relief should be dismissed. In making that request Amazon is raising a completely separate issue that the Court will not reach if it denies enforcement of the arbitration agreement's class action waiver — public injunctive relief is *only sought* if that class action waiver is enforced. Second Amended Complaint, Doc. 34, p. 14., ¶ 34.

Plaintiff asks leave to fully brief the issue of whether public injunctive relief is available once the Court decides whether the arbitration agreements' class action waivers are enforceable. Such a process would provide a more suitable and efficient presentation of that issue (if it needs to be considered) in light of the Court's decision on the class action waiver issue.

### B. If it considers the issue at this time, the Court should find that public injunctive relief is properly sought by the plaintiff.

It is difficult to imagine a more broad scope of relief than that provided by the Nevada Constitution, Article 15, Section 16 (7):

> An employee claiming violation of this section is entitled to bring an action against his or her employer in the courts of this State to enforce the provisions of this section and **shall be entitled to all remedies available under the law or in equity appropriate to remedy any violation of this section, including but not limited to back pay, damages, reinstatement or injunctive relief.** An employee who prevails in any action to enforce this section shall be awarded his or her reasonable attorney's fees and costs. (emphasis added)

Plaintiff is not just entitled to damages. Or a "personal" remedy of his "injury." He is entitled to whatever relief, including "injunctive relief," that is necessary "...to remedy any *violation of this section...*" It is Amazon's violations of the *section*, not the scope of the individual plaintiff's injury, for which a remedy — injunctive relief — is sought and available. *See,* Doc. 14, Second Amended Complaint, second claim for relief, p. 11-15. That claim includes a request for public injunctive relief, something Amazon expressly excludes from its arbitration agreement.

Amazon's claim that public injunctive relief is not available to the plaintiff, citing cases such as *Hodges v. Comcast Cable Communications, LLC*, 21 F. 4th 535 (9th Cir. 2021) and *Capriole v. Uber Technologies, Inc.* 7 F. 4th 854 (9th Cir. 2021), are not directly on point in respect to Nevada law and the claims actually before the Court. In *Capriole* it was doubted that the state law at issue even afforded equitable relief rights to the plaintiffs. 7 F.4th at 869. *Hodges*, over a vigorous dissent, took a narrow view of the availability of public injunctive relief under California law, as found in *McGill v. Citibank, N.A.,* 393 P.3d 87 (Cal. Sup Ct. 2017). It found such relief only available in a very narrow "general public interest" circumstance, such as to prevent future false advertising, and not in any fashion that solely benefitting a discrete group of persons which constitutes "private" injunctive relief. 21 F.4th at 542. It expressly rejected the holding in *Meija v. DACM Inc.,* 54 Cal. App. 5th 691, (Cal. Ct. App. 2020) taking a broader view of *McGill* and the scope of public injunctive relief that is not foreclosed

by an arbitration agreement. The California Supreme Court has not yet addressed if *Hodges* or *Meija* properly set forth the scope of permissible public injunctive relief under California law.

The public injunctive relief found properly pursed in *Meija* was to prohibit a motor vehicle dealer from selling vehicles in the future without providing a required written document relating to the transaction's terms. 54 Cal. App. 5th at 695-696. That is analogous to the potential public injunctive relief sought in this case, a process whereby all Amazon Flex drivers will be advised of their Nevada minimum wage rights in connection with the work they perform for Amazon. Doc. 14., p. 15, (c). While Nevada's jurisprudence in this area is not developed in the same fashion as California's, the limited precedents support the conclusion Nevada *would* allow the plaintiff to pursue some form of public injunctive relief, as in *Meija*.

*Nevada Real Estate Commission v. Resel*, 294 P.2d 1115, 1116 (Nev. Sup. Ct. 1956), agreed with the finding of *Itcaina v. Marble,* 55 P.2d 625, 630 (Nev. Sup. Ct. 1936), discussing enforcement by private individuals of the Nevada's Grazing Act's regulating of activity on public land, stating that:

> We are of the opinion that it [the act] had power to confer upon courts of equity jurisdiction of a case arising under the statute notwithstanding no property right could be invaded by one violating the provisions of the act. It is well settled that the state, in the exercise of its police powers, may authorize courts of equity in proper cases to prohibit by injunction the violation of the provisions of an act of the Legislature, though no property right is involved.

No more recent Nevada authority disputes the foregoing principle — that Nevada may and does grant the power to individual citizens to seek injunctive relief prohibiting violations of Nevada's laws. That principle is fully supportive of plaintiff's claim that Nevada's Constitution, as cited *supra,* grants him the power to seek public injunctive relief to cure Amazon's ongoing violations of the same.

## CONCLUSION

Wherefore, the defendants' motion should be denied.

Dated this 16th day of October, 2026

Leon Greenberg Professional Corporation

By: */s/ Leon Greenberg Esq.,*

Ruthann Devereaux-Gonzalez, Esq.
Nevada Bar No.: 15904
Leon Greenberg, Esq.
Nevada Bar No.: 8094
1811 South Rainbow Blvd- Suite 210
Las Vegas, Nevada 89146
(702) 383-6085

Attorney for Plaintiffs

# EXHIBIT "A"

LEON GREENBERG, ESQ., SBN 8094
RUTHANN DEVEREAUX-GONZALEZ, ESQ., SBN 15904
Leon Greenberg Professional Corporation
1811 South Rainbow Blvd- Suite 210
Las Vegas, Nevada 89146
(702) 383-6085
(702) 385-1827(fax)
leongreenberg@overtimelaw.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ANDREW SPINNEY, Individually and on behalf of a class of all similarly situated persons, Plaintiffs, -v- AMAZON LOGISTICS, INC. and AMAZON.COM, INC., Defendants. | Case No.:2:25-CV-1803-RFB-DJA **DECLARATION** |

Leon Greenberg, an attorney duly admitted to practice law in Nevada and a member of the bar of this Court, hereby affirms, under penalty of perjury, that

1. I am the attorney for the plaintiff and offer this declaration in connection with the plaintiff's opposition to the defendants' motion to compel arbitration. triable.

2. Annexed to this declaration are the following:

(A) A declaration of the plaintiff, Andrew Spinney, that I have reviewed

with him and he has confirmed is accurate. A signed copy of that declaration will be filed with the Court shortly;

(B) A copy of certain records of the plaintiff's work for Amazon that he discusses in the attached declaration.

3. In the attached declaration the plaintiff makes a statement about the estimated potential amount of unpaid minimum wages he is owed by Amazon. That statement in turn references the records the plaintiff provided to me for 22 of the delivery blocks he completed for Amazon and a spreadsheet I created from the information in those records. I provide that spreadsheet information below:

| DATE DELIVERY BLOCK PERFORMED | TOTAL "DELIVERY BLOCK" HOURS | TOTAL PAY FOR DELIVERY BLOCK |
|---|---|---|
| 5/26/2024 | 4.5 | 97 |
| 5/27/2024 | 2 | 39 |
| 5/28/2024 | 3 | 58.5 |
| 5/29/2024 | 7.5 | 135 |
| 5/30/2024 | 8 | 166.5 |
| 5/31/2024 | 7.5 | 135 |
| 6/3/2024 | 8 | 144 |
| 6/4/2024 | 8 | 157.5 |
| 6/5/2024 | 8 | 146 |
| 6/6/2024 | 8 | 144 |
| 6/7/2024 | 4 | 100 |
| 6/8/2024 | 3.5 | 75.5 |
| 6/11/2024 | 6.5 | 117 |
| 6/12/2024 | 5 | 90 |
| 6/13/2024 | 8 | 165.5 |
| 6/14/2024 | 6.5 | 142.5 |
| 6/15/2024 | 3 | 66 |
| 6/16/2024 | 4.5 | 81 |
| 6/19/2024 | 5 | 90 |
| 6/20/2024 | 8 | 144 |
| 6/22/2024 | 7 | 146 |
| 6/24/2024 | 8 | 151.5 |
| TOTALS | 133.5 | 2591.5 |

I have read the foregoing and affirm under penalty of perjury that the same is

true and correct.

Affirmed this 16th Day of September, 2026

/s/ *Leon Greenberg, Esq.*
Leon Greenberg, Esq.
Nevada Bar No.: 8094

LEON GREENBERG, ESQ., SBN 8094
RUTHANN DEVEREAUX-GONZALEZ, ESQ., SBN 15904
Leon Greenberg Professional Corporation
1811 South Rainbow Blvd- Suite 210
Las Vegas, Nevada 89146
(702) 383-6085
(702) 385-1827(fax)
leongreenberg@overtimelaw.com
ranni@overtimelaw.com
Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

**-----------------------------------------------------X** **Case No.:2:25-CV-1803-RFB-DJA**

**ANDREW SPINNEY, Individually and on behalf of a class of all similarly situated persons,**

**Plaintiffs,** **DECLARATION**

**-v-**

**AMAZON LOGISTICS, INC. and AMAZON.COM, INC.,**

**Defendants**

**-----------------------------------------------------X**

Andrew Spinney, being over the age of 21, hereby declares and states as follows under the penalty of perjury.

1. I am the plaintiff in this case.

2. I am advised by my attorney that the defendants in this case ("Amazon") claim that based on a review of their records I performed a total of 36 different delivery blocks as an Amazon Flex driver for Amazon, all in 2024. I have no reason to believe that information is incorrect.

3. When I worked as an Amazon Flex driver Amazon paid me a set amount for delivering all of the packages in an Amazon delivery block. If I was unable to deliver a package I was required to return it to the Amazon Flex station where I picked up all of the packages before I started doing those deliveries. I would estimate in approximately 50% or more of the delivery blocks I was assigned I had at least one undeliverable package I had to return to the Amazon Flex station.

4. For each delivery block I performed Amazon would provide me with a record or receipt electronically. Attached to this declaration is one page containing those records for different delivery blocks I performed in May of 2024. Each of those records would have a start and end time (in the attached between two and five hours apart) and an amount I was paid for completing the delivery block. I was expected to complete the entire delivery block by the end time.

5. Amazon required I use my personal vehicle to deliver the packages assigned to me. I was required to bring that personal vehicle with me to the Amazon station where I picked up those packages. It would typically, depending on traffic conditions and where I ended my delivery block for the day, consume approximately one hour of my time driving to Amazon's station to pick up my delivery block and then home when I finished my last delivery. If that driving time (to Amazon's station to pick up the packages and then returning my car home after the last delivery) was considered "work" the amount of time I worked each day that I performed a delivery block was always longer than the time (between two and five hours) for each delivery block shown on the records attached to this declaration. In addition, when I was

required to return an undeliverable package to Amazon's Flex station that would also consume additional time. Amazon would have a record of the exact amount of time I spent from my arrival at their Flex station to load up the packages in my car until when I completed the last delivery of my delivery block since that information was electronically recorded by them through my phone.

5. I understand the claim being made in this case is that Amazon was my employer and the employer of its other Flex drivers in Nevada and failed to pay its Flex drivers at least the required Nevada hourly minimum wage for all of their work. I understand that the Nevada hourly minimum wage was $11.25 an hour in 2024 prior to July 1, 2024, and $12.00 an hour after July 1, 2024. I also understand that Amazon's failure to pay me and its other Nevada Flex drivers at least the Nevada minimum hourly wage is claimed to have resulted from (1) the mileage costs its Flex drivers paid since they drove their own vehicles; and (2) the need for Amazon to pay the Nevada minimum wage for all of the time we worked — including the time we spent driving our vehicles, which were required for our work, to and from our homes where we kept our vehicles and Amazon Flex's delivery station and the location where we performed the last delivery each day for Amazon.

6. During days I worked as an Amazon flex delivery driver I would estimate I was required to drive my vehicle, on average, between 80 to 100 miles, and sometimes more than 100 miles, to perform my work. When I performed smaller delivery blocks I usually drove fewer miles and when I performed larger delivery blocks that took longer I usually drove more miles. Amazon would have a precise record of the minimum

amount of miles I drove each day actually dropping off packages since they had a record of every delivery location I needed to reach.

7. I have provided my attorney with the same form of attached records that provide information on 22 of the delivery blocks I performed for Amazon as a Flex driver.

8. While I cannot state an amount based on precise knowledge (Amazon has the records I would need to make a more precise calculation), based on the information currently available, I have no reason to estimate that my individual claim for unpaid Nevada minimum wages owed to me by Amazon is for an amount of over $2,000 and it could be for less than $1,200. I make that estimate based on the following facts:

(a) The 22 records of delivery block I performed for Amazon indicate those blocks were for 133.5 hours — the total hours between the start time and end time of each delivery block when added together — for which I was paid $2,591.10 or $19.42 a "scheduled delivery block hour" as per a spreadsheet of that information from those 22 records assembled by my attorney;

(b) If I worked an additional 1.5 hours every delivery block, either driving to the Amazon Flex station or home after my last delivery I would have worked 33 additional hours (22 x 1.5) or 163.5 hours for which I was paid $2,591.10 or $15.85 an hour. That would be an amount, if mileage costs were not considered, of $751.72 more than

the $11.25 Nevada minimum hourly wage ($1,839.38 for 163.5 hours) for those 22 delivery blocks;

(c) If I drove 100 miles every one of those 22 delivery blocks, and should have received payment at the then existing IRS business mileage expense rate of 67 cents per mile, I would also need to be paid $1,474 above the Nevada hourly minimum wage to cover those per mile driving expenses;

(d) Applying the foregoing assumptions, while I needed to be paid at least $1,474 by Amazon in addition to the $11.25 an hour minimum wage for the 22 delivery blocks discussed I was only paid $751.72 of that amount. As a result, I was paid $722.28 less than what the Nevada minimum wage law required I be paid for those 22 delivery blocks under those assumptions, or approximately $32.83 per delivery block;

(e) If the foregoing assumptions were applied to the 36 delivery blocks Amazon says I performed I would be owed approximately $1,182 in unpaid Nevada minimum hourly wages ($32.83 per block x 36).

I have read the foregoing and affirm the same is true and correct.

Affirmed this 15th day of September, 2026.

___________________

Andrew Spinney

| | | |
|---|---|---|
| Thu, May 30 | 5:15 AM – 10:15 AM | Paid | $112.50 |
| Wed, May 29 | 5:45 PM – 8:45 PM | Paid | $54 |
| Wed, May 29 | 10:00 AM – 2:30 PM | Paid | $81 |
| Tue, May 28 | 6:45 PM – 9:45 PM | Paid | $58.50 |

**Payment sent** — Tue, May 28 — **$136**

| | | | |
|---|---|---|---|
| Mon, May 27 | 6:00 PM – 8:00 PM | Paid | $39 |
| Sun, May 26 | 5:30 PM – 10:00 PM | Paid | $97 |